*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| CONSTANCE FULLERTON, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Docket No. 05-01-P-S |
| | ) | |
| GENERAL MOTORS CORPORATION, | ) | |
| | ) | |
| Defendant | ) | |

### *MEMORANDUM DECISION ON MOTIONS* IN LIMINE

The defendant has filed two motions *in limine* and the plaintiffs one, all seeking to exclude or limit the testimony of various expert witnesses at trial. I deny all but a portion of one of the motions.

### I. Applicable Legal Standard

Both parties seek to exclude expert testimony pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Defendant's Motion to Exclude or Limit Testimony of Plaintiffs' Expert, Neil Mizen, etc. ("Mizen Motion") (Docket No. 33) at 1; Plaintiffs' Motion in Limine to Preclude Portions of Testimony of Defendant's Experts Richard Keefer and David McKendry, etc. ("Plaintiffs' Motion") (Docket No. 35) at 5; General Motors' Motion to Exclude Testimony of Plaintiffs' Experts Related to Wear on Shift Lever, etc. ("Shift Lever Motion") (Docket No. 36) at 1.

*Daubert* is often characterized as establishing the trial court as the "gatekeeper" for expert testimony. *See* 509 U.S. at 589 n.7. While it is now clear that the trial court's general "gatekeeping" function with respect to expert testimony that was set forth in *Daubert* applies to all expert testimony, not just that based on scientific knowledge, *Kumho*, 526 U.S. at 141, it is also clear that the specific

1

analytic factors listed in *Daubert* "neither necessarily nor exclusively appl[y] to all experts or in every case," *id*. Relevant reliability concerns may focus on personal knowledge or experience, not just scientific principles. *Id*. at 148-49. "[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id*. at 150 (quoting with approval from the brief for the United States as *Amicus Curiae*). "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id*. at 153.

## II. The Mizen Motion

The defendant seeks to exclude the testimony of Neil Mizen, an expert witness designated by the plaintiffs, in the following specific respects:

> 1. To exclude any reference or testimony to an "illusory park" condition;[1]
> 2. To exclude testimony suggesting that the so-called "illusory park" condition did or may have occurred in connection with the plaintiffs' accident;
> 3. To exclude testimony . . . about why the car moved if it was left in the condition he calls "illusory park;"
> 4. To exclude testimony . . . about what the car would do if left in reverse or neutral at the accident site;
> 5. To exclude testimony . . . about his proposed alternative design; and
> 6. To exclude testimony . . . characterizing as a "defect" a condition common to automatic transmission vehicles in general.

Mizen Motion at 1-2.

### A.  Item 1

The defendant states that "[i]t is undisputed that the transmission in the 1990 Cadillac can be placed so that the shift indicator is between 'P' and 'R,' while the park pawl at the transmission is

---

[1] It is clear from the context that the defendant seeks to exclude Mizen's use of this term to describe the condition rather than his
(*continued on next page*)

2

engaged such that the transmission is actually in park." *Id*. at 3. It contends that Mizen characterizes this as a defective condition, which he calls "illusory park," and that this characterization is misleading. *Id*. at 3-4. It suggests that the word "illusory" "is apparently chosen to suggest that the car somehow tricks the operator into placing the transmission into that position," thereby attributing error to the car. *Id*. at 4. It asserts that this terminology "is not the result of objective, scientific analysis," in an attempt to bring its argument within the scope of *Daubert*, *id*., but the argument is really only that the term "illusory park"[2] is so misleading that it will inevitably confuse the jury or be unduly prejudicial to the defendant.

Contrary to the defendant's contention, it is not necessary that Mizen "rely on any industry standard, scholarly publication, research or scientifically valid analysis," *id*., to support his choice of a shorthand title for this condition. The defendant's speculations concerning Mizen's choice of words cannot provide the basis for exclusion of those words from the trial. My review of Mizen's report, Exh. A to Affidavit of Neil Mizen ("Mizen Aff.") (Docket No. 46), convinces me that his choice of words is both appropriate and descriptive. As explained in the report, and as can be explained to a jury through direct or cross-examination, the term does not suggest that the "car somehow tricks the operator into placing the transmission into that position." It refers to the state of mind of the operator who places the shift lever into a position allowed by the lever which will not necessarily achieve the result anticipated by the operator. The motion is denied as to the first item.

### B. Item 2

The defendant contends that "Mizen did literally nothing to connect the so-called 'illusory park' phenomenon to the accident." Mizen motion at 5. Apparently, it takes the position that this

---

proffering of an opinion or opinions about the condition itself.
[2] I note that the term "illusory park" has been used to describe this condition in other cases. *See, e.g., Miller v. Ford Motor Co.*, 184 F.R.D. 581, 582 (S.D.W.Va. 1999) (Ford vehicles); *Pappas v. Ford Motor Co.*, 7 F.Supp.2d 22, 24 (D.D.C. 1998) (Ford
(*continued on next page*)

makes any testimony from Mizen connecting the "illusory park" to Mrs. Fullerton's accident inadmissible. This is so, the defendant asserts, because Mizen "made no attempt to approach the accident site from the direction that Mrs. Fullerton did, or to maneuver the car in the driveway in the fashion she described. *Id*. Further, it asserts, "Mizen . . . did literally nothing to determine the conditions under which the vehicle would or would not remain stationary" in the position where Mrs. Fullerton described leaving it. *Id*. at 6. It finds further support for its position in the asserted fact that Mizen took photographs of the car during his investigation only from the rear, "where it is impossible to tell where the car is positioned relative to the road, the mouth of the driveway, and the crest of the driveway." *Id.* Contrary to the defendant's argument, these observations, if accurate, do not render Mizen's opinion inadmissible. At most, they go to the weight of his opinion testimony. The motion is denied as to the second item.

### C. Item 3

The defendant next argues that Mizen "did nothing to establish the conditions that would be required to disengage the park pawl so the car could move rearward, if in fact it had been left with the shift level between 'P' and 'R.'" *Id*. at 7. It contends that Mizen's opinion that engine vibration caused the level to move out of "Park" "is not based on any valid methodology," because Mizen "does not claim to have actually tested" this conclusion "nor does he supply any engineering basis for his opinion." *Id*. To the contrary, Mizen has stated that he was able to disengage the park pawl from the sprocket "with a very small amount of force being applied to the selector lever," that he was able to accomplish such disengagement "using very slight force with one of my fingers," and that his opinion that engine vibration can exert sufficient force to cause this disengagement "when the selector lever is placed in various positions between park and reverse" is "[b]ased on more than 30 years of inspecting

---

Fairmont).

4

and testing hundreds of vehicles exhibiting this 'Illusory Park' phenomenon." Mizen Aff. ¶ 3. From all that appears in the papers filed in connection with this motion, Mizen was not asked at deposition about the methodology he used in reaching this conclusion. His affidavit testimony is sufficient to overcome the defendant's argument;[3] the defendant has not shown that an "engineering basis" for the opinion is legally required, or indeed what an "engineering basis" would be, as distinguished from the information Mizen has provided. The motion is denied as to Item 3.

### D. Item 4

The defendant contends that Mizen "did literally nothing to evaluate how the vehicle would behave, if left in the very spot that the Fullertons described." Mizen Motion at 8. Therefore, it asserts, he may not testify about what the car would do under those circumstances. To the contrary, Mizen avers that he inspected and tested the vehicle in the location to which he was directed by Mrs. Fullerton. Mizen Aff. ¶ 3. The fact that the defendant has obtained evidence which may suggest that the car was left in a different position on the driveway, Mizen Motion at 8, does not make Mizen's opinions inadmissible. Again, the defendant offers at most considerations that go to the weight of the testimony rather than its admissibility. The motion is denied as to Item 4.

### E. Item 5

The defendant contends that Mizen's testimony about an alternative design that he asserts would make the accident that occurred in this case less likely is inadmissible because that design "cannot be shown to be practical or effective." *Id*. at 10. If the alternative design "cannot be shown to be practical," that would appear to be a matter for cross-examination. The defendant asserts that

---

[3] The defendant suggests in its reply memorandum that the plaintiffs' opposition to its motion on this and the fourth item "contradicts" Mizen's deposition testimony, although it does not make clear what the consequence of this alleged "contradiction" should be. Reply Memorandum of Defendant General Motors in Support of Motion to Exclude Testimony of Neil Mizen (Docket No. 52) at 1-3. It attacks portions of Mizen's affidavit as incomplete or unclear. I do not find the only portions of his deposition testimony actually cited by the defendant in this regard, *id*., to be necessarily inconsistent with any statements in his affidavit. Again, the defendant's argument (*continued on next page*)

Mizen has not made an effort "actually to design" the alarm system that he describes and "has done nothing to evaluate or test" it. *Id*. at 11. The defendant states that Mizen "has not even tried to apply scientific analysis, objective date, or generally accepted principles to show that his proposed alternative is feasible, practical and effective," *id*., but it cites no deposition testimony or other evidence to that effect. The defendant cites *Kumho*, 526 U.S. at 151, Mizen Motion at 12, in support of this assertion, but that page of that opinion does not impose the requirement which the defendant would have this court adopt. The Supreme Court's discussion at that page considers reasons why all of *Daubert*'s list of evaluative factors might not be applicable in every case in which expert testimony is challenged and holds that "[i]n certain cases" it will be appropriate for the court to ask how often an expert's "experience-based methodology had produced erroneous results, or whether such a method is generally accepted in the relevant engineering community." 526 U.S. at 151. There is no indication in the materials presented in connection with the motion *in limine* that Mizen was asked such questions. The motion is denied as to Item 5.

### F. Item 6

Finally, the defendant contends that, because Mizen could not offer any evidence at his deposition that "it's any easier to put this vehicle into what you call illusory park than it is to do so with the vast majority other [sic] cars" and concedes that the possibility of leaving the shift indicator between park and reverse while the park pawl is engaged "is a characteristic that is common to the 'vast majority' of vehicles," *Daubert* requires that his testimony characterizing "illusory park" as a "defect" must be excluded. Mizen Motion at 9-10. However, neither *Daubert* nor *Kumho* can be read to require that, in order to be identified as a "defect" by an expert witness, a design feature or condition of the injury-causing item be unique to that item or common to less than some specified

---

goes to the weight of Mizen's testimony rather than its admissibility.

percentage of all such items available in the stream of commerce. First Circuit case law allows expert testimony under these conditions. *See, e.g., Estate of Spinosa v. International Harvester Co.*, 621 F.2d 1154, 1161-62 (1st Cir. 1980) (fact that pickup truck was "on a par with other products in the industry" not reason to take question from jury). The motion is denied as to Item 6.

### III. Plaintiffs' Motion

The plaintiffs move to exclude any opinion testimony from two expert witnesses identified by the defendant, Richard Keefer and David McKendry, to the effect that Mrs. Fullerton left the vehicle in "reverse" rather than "park" on the night of the accident. Plaintiffs' Motion at 1-2. The plaintiffs assert that McKendry testified at deposition that he believed that Mrs. Fullerton did so "because she usually did it" and that Keefer testified at deposition that he believed she did so "accidentally because she was distracted by the task of having to retrieve the rakes." *Id*. at 4. This testimony is at odds with that of Mrs. Fullerton. *Id*. The plaintiffs contend that this testimony must be excluded because "[i]t is not a valid basis for expert opinion that a witness acted contrary to her sworn testimony" for the reasons given by Keefer and McKendry. *Id*. at 5.

The defendant responds that the plaintiffs' motion omits certain relevant facts, based on tests and measurements conducted at the scene of the accident and on the gear shift lever in question that are inconsistent with Mrs. Fullerton's testimony. Defendant's Memorandum Opposing Plaintiffs' Motion to Preclude Portions of Testimony of Experts Richard Keefer and David McKendry (Docket No. 42) at 3-5. When such evidence calls into question a plaintiff's testimony, the plaintiff cannot exclude the expert's factual or opinion testimony merely because it is inconsistent with her testimony. In the case law cited by the plaintiff from other jurisdictions, a plaintiff was offering expert testimony that was inconsistent with his own testimony, and in both cases the plaintiff sought to support the expert's testimony by submitting an affidavit that contradicted his earlier deposition testimony. *Macaluso v.*

*Herman Miller, Inc.*, 2005 U.S.Dist.LEXIS 3717 (S.D.N.Y. Mar. 9, 2005), at *19- *21; *Davidov v. Louisville Ladder Group, LLC*, 2005 U.S.Dist.LEXIS 3117 (S.D.N.Y. Mar. 1, 2005), at *1- *4. These cases are easily distinguishable from the situation here, where a plaintiff attempts to use her own testimony, however strongly that testimony may be challenged, to preclude the defendant from offering evidence to the effect that a different mechanism of injury was more likely than that set forth by the plaintiff. The plaintiff also relies, Plaintiffs' Motion at 6, on my decision in *Elwell v. Conair, Inc.*, 145 F.Supp.2d 79 (D.Me. 2001), in which I granted a motion to exclude certain expert testimony offered by the plaintiff when the plaintiff had failed to provide evidence of a fact essential to the expert's opinion, *id*. at 90. Again, that is not the case here, where the defendant, the party offering the expert opinion, has offered evidence to support that opinion. That the evidence is disputed makes it no less admissible. It is the traditional role of a jury to resolve such conflicts.

The plaintiffs' motion is denied.

### IV. Shift Lever Motion

The defendant has moved to exclude testimony from Mizen and another expert witness designated by the plaintiff, Wilson Dobson, about wear on the shift lever in the plaintiffs' Cadillac. Shift Lever Motion at 1. Specifically, the defendant seeks exclusion of all of the testimony of Dobson and any testimony by Mizen "related in any way to wear on the shift lever removed from the plaintiffs' vehicle." *Id*. Dobson's testimony should be excluded, the defendant contends, because "he did nothing to determine whether the wear on the shift lever makes any difference [ in the way the part actually operates]." *Id*. at 7. Mizen's testimony about the wear should be excluded, the defendant asserts, because he testified at deposition that he "replicated the experience with both a new selector lever and a worn selector lever and found essentially no difference" and, to the question "So it's just a non factor in your opinion then?" responded "Yes." *Id*. at 7-8. The defendant characterizes this

testimony as a concession "that the wear makes no difference to the actual performance of the part when compared to a new one," making the wear both irrelevant and unduly prejudicial. *Id*. at 6-8.

With respect to Dobson, the plaintiffs respond that "[i]t was not Mr. Dobson's task . . . to analyze the effect of this defect." Plaintiffs' Opposition to Defendant's Motion to Exclude Testimony of Plaintiffs' Experts Related to Wear on Shift Lever, etc. (Docket No. 47) at 2. The plaintiffs do concede that "[t]he admissibility of [Dobson's] testimony is dependant on the testimony of Mr. Mizen." *Id*. They then say essentially nothing more about Dobson.

As the plaintiffs point out, Mizen stated in his report that

> the unusual wear at the Tang end of the Selector Lever was a contributing cause of the accident. The Selector Lever in use at the time of this accident had a worn spot at the Tang end, where the lever interacts with the Selector Gate. Tests conducted with a new, unworn Selector Lever showed that the existence of Illusory Park exists with a new Selector Lever as well as with the worn Selector Lever. However, the wear at the Tang end of the Selector Lever increases the level of "play" present in an already defective system. In the subject vehicle, the wear at the Tang end introduced additional free movement in the system and increased the likelihood that the driver would believe the Selector Lever was in Park Lock when it was not. It is my opinion, therefore, that the wear which developed at the Tang end of the Selector Lever combined with the defective design of the system to cause the accident.

*Id*. Counsel for the defendant was apparently able to get Mizen to minimize the increase in likelihood to which his report refers. Even if an expert directly contradicts his report in deposition testimony, however, that contradiction merely provides ground for impeaching his testimony at trial. It does not require that the opinions expressed in the report be excluded from the evidence presented at trial.

Dobson's proposed testimony presents a different question, primarily because neither party has taken the time to put this issue fully before the court. The plaintiffs assert, without citation to the record, that Dobson "conducted a metallurgical analysis of the shift lever and determined that its microstructure was defective." *Id*. at 2. They do not explain how Mizen's testimony relates to this

9

determination. The wear on the tang is apparent in the photographs that are Exhibit A to the plaintiffs' opposition. In the absence of any suggestion that Mizen cannot testify to the wear without the proffered testimony of Dobson,[4] or any other reason why evidence that the microstructure of the shift level was defective is required to support or allow any testimony by Mizen, I conclude that the relevance of Dobson's testimony has not been shown by the plaintiffs. I grant the motion as to the testimony of Dobson only.

## V. Conclusion

For the foregoing reasons, the defendant's motion to exclude or limit the testimony of Neil Mizen (Docket No. 33) is **DENIED**; the plaintiffs' motion to exclude portions of the testimony of Richard Keefer and David McKendry is **DENIED**; and the defendant's motion to exclude all or portions of the testimony of Mizen and Wilson Dobson is **GRANTED** as to Dobson and otherwise **DENIED**.

Dated this 11th day of January 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

[4] I realize that the transcript of Dobson's entire deposition has been provided by the defendant. Shift Lever Motion at 7 n.2. It is not the role of the court to pore through such documents looking for testimony that might explain what either party has decided not to explain in their memoranda of law.